IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAN HENG | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-6119 |
| | : | |
| SECRETARY OF THE NAVY | : | |

**<u>MEMORANDUM</u>**

**Judge Juan R. Sánchez**                                      **March 30, 2026**

Plaintiff San Heng brings this action against his former employer Defendant Secretary of the Navy ("the Navy") alleging the Navy subjected him to a hostile work environment based on his race and national origin and terminated him in retaliation for complaining about the discrimination. The Navy has filed a motion to dismiss all claims. Because Heng has alleged sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of his claims, the Court will deny the motion to dismiss.

**BACKGROUND**

On December 19, 2022, San Heng, an Asian male of Cambodian descent, was hired by the Navy to serve as a police office at its naval station located in Philadelphia. Comp. ¶¶ 7, 9, Dkt. No. 1. Immediately after beginning his position, Heng alleges his coworkers, officers Amanda Greico, Scott Stratton, and Damien Johnson, began making racial comments and mocking his accent. *Id.* ¶¶ 9-10. He complained about this conduct to his supervisor and instructor, Brian Bates. *Id.* ¶ 11. After he initially complained to his supervisor, these coworkers filed a complaint against Heng claiming he made violent and disturbing statements to them. *Id.* ¶ 13, 47. On January 13, 2023, an internal investigation was opened on Heng based on these allegations. *Id.* ¶ 15. Heng denies these allegations. *Id.* ¶ 14.

Through the next month, Heng alleges he experienced multiple instances of harassment by his coworkers, Greico, Stratton, and Johnson. *Id.* ¶¶ 20, 22, 25-28. He cites the following specific incidents in his complaint. On January 19, 2023, his coworkers began excluding him from activities and interrupt him while speaking. *Id.* ¶ 25. On February 2, 2023, Stratton cursed at Heng. *Id.* ¶ 26. On February 6, 2023, Stratton and Johnson made fun of his height, told him he did not know how to play basketball, and told him he did not know how to fight. *Id.* ¶ 27. On February 15, 2023, Stratton and Johnson spoke with an Asian accent towards Heng and mocked his physical similarity to an Asian Male officer depicted on a training PowerPoint slide. *Id.* ¶ 28.

Heng alleges he reported this behavior to Bates multiple times.[1] Specifically, after this February 15th incident, Heng complained to Bates about this behavior. *Id.* ¶ 29. Bates immediately reported the comments to his supervisor James Bell. *Id.* ¶ 30. Bell then came into the training room and informed the officers that the issues going on needed to stop. *Id.* ¶ 31. On February 21, 2023, Heng was terminated by the Navy as a result of the previous investigation. *Id.* ¶ 32. On the same day, Heng was scheduled to discuss his complaints of racial discrimination and harassment with the Equal Employment Opportunity Commission. *Id.* ¶ 33.

On November 14, 2024, Heng filed a Title VII action against the Navy alleging retaliation and racial and national origin discrimination. He served the Government on December 3, 2024. Dkt. No. 3. On March 28, 2025, Heng filed a request for entry of default and a motion for default judgment. Dkt. No. 7. On April 3, 2025, the Clerk of Court entered a default against the Navy for failure to plead or otherwise defend. Dkt. No. 8. On August 11, 2025, the Navy filed the instant motion to dismiss.

---

[1] For many of these instances, Heng does not list the specific dates of his complaints. *Id.* ¶¶ 11, 22, 45.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rather, the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construes the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

"To defeat a motion to dismiss, it is sufficient to allege a prima facie case." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (citing *Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017)). "But it is not necessary" at the motion to dismiss stage. *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)); *Swierkiewicz*, 534 U.S. at 511 ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."). The complaint need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." *Martinez*, 986 F.3d at 266 (quoting *Fowler*, 578 F.3d at 213) (alteration in original).

3

**DISCUSSION**

The Navy has moved to dismiss Heng's hostile work environment and retaliation claims against it. The Court finds Heng has alleged sufficient facts for both claims. The Court first turns to Heng's claim alleging a hostile work environment against the Navy (Count One). To state a claim for hostile work environment, a plaintiff must show "(1) the employee suffered intentional discrimination because of his/her [race or national origin], (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." *Castleberry*, 863 F.3d at 263 (citation omitted).

The Navy argues that Heng has not shown the conduct at issue in this case was severe or pervasive. In assessing a hostile work environment, the court should "'concentrate not on individual incidents, but on the overall scenario,' when analyzing a hostile work environment claim." *Qin v. Vertex, Inc.*, 100 F.4th 458, 471 (3d Cir. 2024) (citing *Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005)). Courts also consider "'the frequency of the [allegedly] discriminatory conduct' in the context of a given case." *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (alteration in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racist slurs, there must be a steady barrage of opprobrious racial comments." *Tourtellotte v. Eli Lilly & Co.*, Civ. No. 09-774, 2013 WL 1628603, at *8 (E.D. Pa. Apr. 16, 2013) (citation omitted). Racist comments which are "sporadic or part of casual conversations" do not rise to that level. *Id*.

Heng alleges his coworkers "made racial comments" towards him and mocked his accent as soon as he started working as an officer. Comp. ¶¶ 9-10, 28. He also alleges they excluded him

4

and teased him about his height and physical ability.[2]  *Id.* ¶¶ 25-27.  These multiple instances of conduct occurred from the start of his job from December 19, 2022 until at least February 15, 2023.  *Id.* ¶¶ 7, 9, 28.  This time frame effectively represents his entire time as an employee of the Navy.  *Id.*  ¶¶ 7, 32.

It is clear these factual allegations as pled do not constitute severe conduct.  *See, e.g.*, *Castleberry*, 863 F.3d at 264-65 (finding a supervisor's use of the n-word in front of plaintiffs accompanied by threats of termination constituted severe conduct).  But his coworkers conduct taken together plausibly allege pervasiveness, especially considering the comments were done frequently over a relatively short period of time.   *Nitkin*, 67 F.4th at 571 ("[W]e consider 'the frequency of the [allegedly] discriminatory conduct' in the context of a given case." (second alteration in original) (citation omitted)).  While these incidents do not present a particularly strong case of pervasive conduct, courts in the Third Circuit have "shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive."  *Booker v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 575, 582 (E.D. Pa. 2012) (quoting *Grasty v. World Flavors, Inc.*, No. 11-1778, 2011 WL 3515864, at *9 n.2 (E.D. Pa. Aug. 11, 2011)).  Additionally, at the motion to dismiss stage, a plaintiff is not required to list out every instance of discriminatory conduct.  *See Castleberry*, 863 F.3d at 266 (finding plaintiffs' claims alleging "'on several occasions' their sign-in sheets bore racially discriminatory comments" could survive because

---

[2]     The Navy also argues these incidents were not racially motivated on their face.  While the Navy may be ultimately correct, the Court find all the alleged conduct taken together is sufficient to survive the low plausibility standard.  *Cf. Ngai v. Urb. Outfitters, Inc.*, No. 19-1480, 2021 WL 1175155, at *15 (E.D. Pa. Mar. 29, 2021) (finding a hostile work environment claim survived . . . because coworkers "claimed [the plaintiff] didn't understand American culture and spoke broken English," "called him 'Mr. Miyagi,' in reference to an elderly, Asian pop culture character," and targeted him "with a poster featuring an emoji-like cartoon with stereotypical Asian feature").

5

"[w]hether these allegations are true and whether they amount to 'pervasiveness' are questions to be answered after discovery (*for example, after determining how many times racial remarks were scribbled on the sign-in sheets*)" (emphasis added)).  So, the Court will not dismiss the claim based on this argument because discovery may reveal more facts about the extent of the allegedly severe or pervasive conduct.

The Navy also contends Heng has not alleged enough facts to meet the *respondeat superior* element of his claim.  "[E]mployer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).  Heng does acknowledge his supervisors did take prompt action in response to at least two of his complaints. Comp. ¶¶ 22-24, 29-31.  He, however, also alleges that these actions were not appropriate or effective and that the supervisors had not acted in other instances.  *Id.* ¶¶ 12, 23, 41.  Under the motion to dismiss standard, Heng has met his burden for this element.  Because Heng has plausibly alleged sufficient facts, the Navy's motion to dismiss his hostile work environment claim will be denied.

The Court next turns to Heng's claim for retaliation (Count Two).  To state a prima facie retaliation claim, a plaintiff must show (1) he engaged in a protected employment activity; (2) the employer took an adverse employment action against him; and (3) a causal link between the protected activity and the adverse employment action.  *Qin*, 100 F.4th at 475.  For purposes of its motion, the Navy does not dispute that Heng engaged in a protected activity, or that they took an

adverse employment action against him.[3]  Instead, it argues Heng has not shown a causal link. Because Heng has alleged a close temporal connection between his protected conduct and his termination, the motion to dismiss will be denied as to the retaliation claim.

A plaintiff can show causation through "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, . . . (2) a pattern of antagonism coupled with timing," or (3) "that from the evidence gleaned from the record as a whole the trier of fact should infer causation."  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (internal quotation marks and citation omitted).  Plaintiffs "may rely upon a broad array of evidence to do so."  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000).

The Navy claims Heng cannot prove causation through unusually suggestive temporal proximity because he has failed to allege when he complained to his supervisor.  This is incorrect. While Heng's allegations are not specific as to the exact date of his complaints, their plain language indicates he first complained to Bates and *then* a complaint and investigation was initiated on January 13, 2023 which resulted in his termination on February 21, 2023.  Compl. ¶¶ 45, 47; *id.* ¶¶ 13, 15, 32.  Because Heng alleges he began work on December 19, 2022, the Court can reasonably infer that he first complained about his harassment sometime between December 19, 2022 and January 13, 2023.  *Id.* ¶ 7.  The timing between Heng's complaint to his supervisor, the investigation against him, and his termination "is well within the three-month range to be unusually suggestive of retaliatory motive."  *Qin*, 100 F.4th at 477 (internal citation and quotations omitted).

---

[3]    Even if the Navy did dispute these elements, it would face an uphill battle.  *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (finding protected activity includes "informal protests of discriminatory employment practices, including making complaints to management"); *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001) ("[T]ermination clearly fulfills the second prong of the prima facie case for a retaliation claim.").

The Navy also argues Heng cannot show the Navy's actions were pretextual.[4]  This argument is not appropriate at the motion to dismiss stage.  Instead, these types of arguments are more suited to a motion for summary judgment where the Navy can argue it had a non-discriminatory and non-retaliatory reason for terminating Heng.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  Because Heng has alleged enough facts to "raise a reasonable expectation that discovery will reveal evidence of" the causal connection between his protected conduct and his termination, the motion to dismiss is denied as to the retaliation claim.  *Martinez*, 986 F.3d at 266 (quoting *Fowler*, 578 F.3d at 213).

**CONCLUSION**

Discovery may show that the Navy is ultimately correct on its arguments and Heng cannot sustain a claim of hostile work environment or retaliation.  But at the motion to dismiss stage, Heng's claims survive dismissal under this Court's low plausibility standard.  The Court will therefore deny the motion to dismiss.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[4]    The Navy attached Notice of Termination During Probationary Period to its motion to support this argument. Dkt. No. 11-1.  A "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court will not consider the notice because Heng's claims are not based on this document.  Instead, this document supports the Navy's defense.  *See, e.g., Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011) ("It is not enough that a putatively integral document be critical for an affirmative defense, or bear on an essential element of the claim.  The rule is applied when the claim would not exist but-for the existence of the document.").